The Honorable Mike Beebe President Pro Tempore Arkansas Senate 211 West Arch Avenue Searcy, Arkansas 72143-5331
Dear Senator Beebe:
I am writing in response to your request, on behalf of the Mayor of Georgetown, for an opinion on three questions concerning the qualifications of a city council member. Specifically, the three questions posed are as follows:
 1. Can a mayor of the town administer the oath of office to the officers of the town?
 2. If the mayor cannot administer the oath of office and has administered the oath of office to an appointed member of the council and the council member votes on an ordinance is the ordinance valid?
 3. If an appointed councilman was appointed to fill a vacancy on the town council for December 2000 term and the 2001-2002 term of the reelected alderman post and the oath of office was administered by the mayor for the 2000 term and the county clerk administered the oath of office for the 2001-2002 term, if the mayor could not administer the oath of office for the 2000 term would the appointed alderman be legally in office for the 2001-2002 term?
RESPONSE
It is my opinion, in response to your first question, that the mayor of an incorporated town is not authorized to administer oaths of office. It is my opinion, nonetheless, that a legally appointed alderman taking the oath of office from the mayor may cast a valid vote on an ordinance coming before the council. This is true under the so-called "de facto" officers doctrine. It is my opinion, in response to your third question, assuming the alderman was validly appointed to fill a vacancy, that he or she is legally in office for the 2001-2002 term after being sworn in by the county clerk for that term.
Question 1 — Can a mayor of the town administer the oath of office to theofficers of the town?
The administration of oaths to public officers is governed generally by A.C.A. § 21-2-105 (Supp. 1999). It provides in pertinent part as follows:
 (a)(1) The Governor shall take the oath of office before one of the justices of the Supreme Court or one of the judges of the circuit courts, the county clerk, or the clerk of the circuit court.
 (2) The justices of the Supreme Court and judges of the circuit courts, Secretary of State, Treasurer of State, and Auditor of State shall take their oaths before the Governor or any of the justices of the Supreme Court or one of the judges of the circuit courts, the clerk of the county court, or the clerk of the circuit court.
 (3) All other officers, both civil and military, shall take their oaths before the Secretary of State or his official designee, any justice or judge, clerk of the county court, clerk of the circuit court, or justice of the peace. [Emphasis added.]
This statute has been held to preclude the administration of oaths by persons not listed in the statute. Crossett v. Switzer, 302 Ark. 239,788 S.W.2d 738 (1990). City council members are presumably covered by subsection (a)(3) of the statute above, and thus may take their oaths from the officials listed in that subsection. Although the mayor of an incorporated town has certain judicial powers under current law (see A.C.A. § 14-45-106 and Amendment 80, § (B)(2) concerning "city courts"), I cannot conclude that he or she is a "justice or judge" for purposes of the statute above. In my opinion, therefore, the mayor is not a person authorized to administer an oath of office under A.C.A. § 21-2-105.
Question 2 — If the mayor cannot administer the oath of office and hasadministered the oath of office to an appointed member of the council andthe council member votes on an ordinance is the ordinance valid?
It is my opinion, assuming the council member was legally appointed to fill a vacancy, that the answer to this question is "yes." Similar issues were discussed in Ops. Att'y Gen. 98-128 and 93-031. In each opinion the case of Pennington v. Oliver, 245 Ark. 251, 431 S.W.2d 843 (1968) was cited. The following excerpt from Opinion 98-128 fairly summarizes the applicable law:
 It is well established that the acts of de facto officers are valid. Chronister v. State, 55 Ark. App. 93, 931 S.W.2d 444 (1996); Ops. Att'y Gen. Nos. 97-257; 97-003.
With regard to this issue, the Pennington court stated:
 [W]e conclude that [the board members in question] were de facto members of the Board, and that their actions were therefore valid. This is in accord with the holdings of this Court in Faucette, Mayor v. Gerlach, 132 Ark. 58, 200 S.W. 279. There we find this statement:
 "A person who enters into an office and under takes the performance of the duties thereof by virtue of an election or appointment, is an officer de facto, though he was ineligible at the time he was elected or appointed, or has subsequently become disabled to hold the office. Indeed, it is settled by a current of authority almost unbroken for over 500 years in England and this country, that ineligibility to hold an office does not prevent the ineligible incumbent, if in possession under color of right and authority, from being an officer de facto with respect to his official acts, in so far as third persons are concerned."
 Pennington, supra, at 254.
It has also been stated that
 it is generally held that persons having color of title may be regarded as de facto officers, even though legally they are not eligible for the position or do not possess the statutory qualifications for the office. One duly appointed or elected to an office but who has failed to take the oath required or to execute a bond within the time prescribed, or one whose bond is irregular, is at least a de facto officer so that his acts are valid as to the public.
67 C.J.S. Officers 269.
 Moreover, this office has previously opined that the failure to take an oath of office as required by law does not affect the validity of acts taken by the person who failed to take the oath. See Op. Att'y Gen. Nos. 93-031; 92-168.
Opinion 98-128 at pp. 4-6. See also Murphy v. Shepard, 52 Ark. 356 (1889) (upholding the validity of the acts of an assessor, as against a collateral attack, who failed to take the general oath of office).
It is often stated that the actions of a "de facto" officer cannot be challenged "collaterally." Chronister v. State, 55 Ark. App. 93,931 S.W.2d 944 (1996) and Appleby v. Belden Corp., 22 Ark. App. 243,738 S.W.2d 807 (1987). That is, actions taken by such an officer cannot be challenged in a proceeding collateral to the eligibility of the officer. Rather, the qualifications of a "de facto" officer must be challenged directly, in a direct proceeding to remove the officer from his post.Id. During the time the officer is allowed to retain his position, his actions will be accorded validity. Id.
In my opinion, therefore, the answer to the second question posed is "yes."
Question 3 — If an appointed councilman was appointed to fill a vacancyof the town council for December 2000 term and the 2001-2002 term of thereelected alderman post and the oath of office was administered by themayor for the 2000 term and the county clerk administered the oath ofoffice for the 2001-2002 term, if the mayor could not administer the oathof office for the 2000 term would the appointed alderman be legally inoffice for the 2001-2002 term?
It is my opinion, assuming the alderman was legally appointed to fill a vacancy, that he or she is now "legally in office."
As noted above, under A.C.A. § 21-2-105(a)(3), the clerk of the county court is a person authorized to administer oaths of office. Under the facts recited, any defective oath administered by the mayor has now been replaced by a proper oath administered by the county clerk. As noted above, actions taken under the defective oath will be given validity under the de facto officers doctrine. Any actions taken after administration of the valid oath given by the county clerk will, in my opinion, be deemed the actions of a de jure officer. Assuming a valid appointment to fill a vacancy, the council member in question is, therefore, after the administration of the oath by the county clerk, "legally in office."
Senior Assistant Attorney General Elana C. Wills prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:ECW/cyh